<u>**FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEBRA WILLIAMS,<br><br>                      Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                      Defendant. | Civ. No. 07-0810 (DRD)<br><br><u>**O P I N I O N**</u> |

*Appearances by:*

LANGTON & ALTER
by: Abraham S. Alter, Esq.
2096 St. Georges Avenue
Rahway, NJ  07065

    *Attorneys for Plaintiff*

CHRISTOPHER J. CHRISTIE
UNITED STATES ATTORNEY for the District of New Jersey
by: Sixtina Fernandez, Esq.
Special Assistant U.S. Attorney
26 Federal Plaza, Room 3904
New York, NY  10278

    *Attorney for Defendant*

<u>**DEBEVOISE, Senior District Judge**</u>

    Plaintiff, Debra Williams, has filed an application for attorney's fees, pursuant to the

Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, following the remand of her case to the Commissioner of Social Security for further consideration. Defendant, the Commissioner of Social Security ("Commissioner"), does not contest the amount of Williams's EAJA request; rather, the Commissioner merely objects to the fee being paid to Williams's attorney. The Commissioner asserts that any fees should be paid directly to Williams as the applicant for the attorney's fees.

In order to advance the purpose of the EAJA, Williams's EAJA fee application will be granted and the fees will be paid directly to her attorney.

## I.  BACKGROUND

On May 18, 1999, Williams filed an application for Supplemental Security Income payments, alleging disability since December 30, 1998, due to carpal tunnel syndrome and degenerative disc disease. The claim was initially denied. A hearing was held before Administrative Law Judge ("ALJ") Richard L. De Steno on November 20, 2000. Following the hearing, on January 23, 2001, the ALJ issued an unfavorable decision finding that Williams was not disabled. The ALJ's decision was appealed to Appeals Council, which found no grounds for review, and the ALJ's decision became the Commissioner's final decision.

On November 21, 2001, Williams filed a Complaint in the District of New Jersey seeking review of the Commissioner's unfavorable decision. Briefs were filed by both parties and on February 23, 2004, District Judge Dennis M. Cavanaugh issued an opinion remanding the case to the Commissioner for further proceedings.

On January 13, 2005, a second hearing was held before ALJ De Steno. During the second set of hearings, Williams's attorney informed the ALJ that Williams had filed a second

application for Supplemental Security Income in July, 2001. On the basis of this second application, the Social Security Administration found that Williams was disabled as of February 1, 2001, due in part to her obesity.

On January 21, 2005, the ALJ again issued an unfavorable decision finding that Williams was not disabled from May, 1999, the date of her original application, until February 1, 2001. The Appeals Council again found no grounds for review and the ALJ's decision became the final determination of the Commissioner. On February 16, 2007, Williams filed a second Complaint in the District of New Jersey seeking review of the Commissioner's unfavorable decision because the ALJ did not consider her obesity and its effect on her ability to perform work-related activities.

On February 25, 2008, this Court remanded the case to the Commissioner for further consideration of whether Williams's obesity rendered her disabled from May 18, 1999, through January, 2001, the month before the Social Security Administration found Williams to be disabled on the basis of her second application. Williams's EAJA application for $5,014.75 in attorney's fees followed the Court's remand order.

## II. DISCUSSION

The EAJA provides that a court shall award attorney's fees and expenses to a prevailing party in a civil action against the United States, unless "the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Williams is the prevailing party in this civil action against the United States because she obtained a favorable judgment when her case was remanded to the Commissioner for further consideration. Shalala v. Schaefer, 509 U.S. 292, 301-02 (1993). In

addition, her application for fees was timely because it was filed within thirty days of the Court's order. § 2412(d)(1)(B). Therefore, under the EAJA, Williams is entitled to $5,014.75 as reasonable attorney's fees.

The issue here, however, is not whether Williams is entitled to fees under the EAJA; but rather, who is the appropriate recipient of the funds: Williams, as the applicant, or her attorney. The Commissioner argues that any fees and expenses should be paid directly to Williams because, as the prevailing party, the fees belong to her, and not to her attorney. In support of this argument, the Commissioner points to the text of the EAJA, which confers the right to fees and expenses to the "prevailing party," and argues that the unambiguous language of § 2412(d)(1)(A) mandates that any funds be paid directly to Williams as the prevailing party.

The Commissioner's efforts to adopt this new practice of routing through the claimant the legal fees payable under the EAJA after a successful appeal of the denial of Social Security benefits, instead of continuing with the common practice of paying the fee award directly to the attorney, has sparked a raft of opinions addressing the discreet issue of who is the appropriate recipient of EAJA funds following the successful appeal of the denial of Social Security benefits. Although some decisions,[1] including two from the District of New Jersey,[2] have agreed with the

---

[1] Manning v. Astrue, 510 F.3d 1246 (10th Cir. 2007); Monagle v. Astrue, 2008 U.S. Dist. LEXIS 28778 (E.D. Pa. Apr. 7, 2008); Hogan v. Astrue, 2008 WL 803649 (W.D.N.Y. Mar. 26, 2008); Vongphakdy v. Astrue, 2008 U.S. Dist. LEXIS 18752 (E.D. Pa. Mar. 11, 2008); Harris v. Barnhart, 2008 U.S. Dist. LEXIS 2649 (E.D. Mo. Jan. 14, 2008); Bribiesca v. Astrue, 2008 U.S. Dist. LEXIS 3815 (N.D. Cal. Jan. 2, 2008); McCarthy v. Astrue, 505 F. Supp. 2d 624 (N.D. Cal. 2007).

[2] Chonko v. Comm'r of Soc. Sec., 2008 U.S. Dist. LEXIS 32867, at *13 (D.N.J. Apr. 22, 2008) (concluding that "prevailing party . . . refers to the litigant herself, not her attorney"); Gardenshire v. Comm'r of Soc. Sec., No. 06-1188 at 5 (D.N.J. Jun. 25, 2007) (interpreting "the plain language of the EAJA as providing that the Court should award fees and costs to the

Commissioner's position, that the language of the EAJA directs an award of attorney's fees to be paid to the applicant, and not her attorney, other decisions have rejected this position and ordered that EAJA fees be paid directly to the applicant's attorney.[3]

The decisions siding with the Commissioner have primarily relied on the principle of statutory construction which holds that courts should apply the plain meaning of a statute when the statutory language is clear and unambiguous.  See, e.g., Chonko v. Comm'r of Soc. Sec., 2008 U.S. Dist. LEXIS 32867, at **12-13 (D.N.J. Apr. 22, 2008); Vongphakdy v. Astrue, 2008 U.S. Dist. LEXIS 18752, at *3 (E.D. Pa. Mar. 11, 2008).  However, these courts, for the most part, have ignored a less often cited, but equally important, principle of statutory construction which holds that when the literal application of statutory language would either produce an outcome demonstrably at odds with the statute's purpose or would result in an absurd outcome, courts are entitled to look beyond the plain meaning of the statutory language.  Stephens v. Astrue, 2008 U.S. Dist. LEXIS 21429, at **8-9 (D. Md. Mar. 12, 2008); see also Green v. Bock Laundry Mach. Co., 490 U.S. 504, 527 (1989) (Scalia, J., concurring); In re Kaiser Aluminum Corp., 456 F.3d 328, 338 (3d Cir. 2006) ("A basic tenet of statutory construction is that courts should interpret a law to avoid absurd or bizarre results."); United States v. Zats, 298 F.3d 182, 187 (3d Cir. 2002) (refusing to "read a text to produce absurd results [that are] plainly inconsistent with the drafters' intentions").

The literal application of § 2412(d)(1)(A) in this case undeniably leads to bizarre and

---

prevailing party, and not to the prevailing party's attorney").

[3] Vargas v. Comm'r of Soc. Sec., 2008 U.S. Dist. LEXIS 18964 (D.N.J. Mar. 12, 2008); Stephens v. Astrue, 2008 U.S. Dist. LEXIS 21429 (D. Md. Mar. 12, 2008); Smith v. Astrue, 2007 U.S. Dist. LEXIS 96826 (N.D. Ala. Oct. 11, 2007).

absurd results.  Therefore, the Court will look beyond the language of the statute[4] in order to give effect to the purpose of the EAJA.  The Court will then consider the Commissioner's argument that the EAJA must be interpreted consistently with 42 U.S.C. § 1988.  On the basis of these considerations, the Court concludes that EAJA fees, once sought by a Social Security claimant, should be paid directly to the attorney.

A. The Purpose of the EAJA

"[T]he clear purpose of the EAJA is to prevent unreasonable government action by providing attorneys to parties who could not otherwise afford one."  Smith v. Astrue, 2007 U.S. Dist. LEXIS 96826, at *7 (N.D. Ala. Oct. 11, 2007).  In enacting the EAJA, Congress found that "certain individuals . . . may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing the vindication of their rights in civil actions and in administrative proceedings."  Pub. L. No. 96-481, § 202(a), 94 Stat. 2325 (1980).  Thus, Congress presented the EAJA, with its costs and fees provision, in order to "diminish the deterrent effect of seeking review of, or defending against, governmental action by providing in specified situations an award of attorney fees, expert witness fees, and other costs against the United States."  Id. at § 202(c)(1).  "The theory underlying EAJA is that

---

[4] Another reason to be guided by the purpose of the EAJA is that the EAJA's Savings Provision (or Savings Clause) calls into question the clarity of § 2412(d)(1)(A).  The Savings Provision directs an attorney who has received fees under both the EAJA and the Social Security Act, 42 U.S.C. § 406(b)(1), to refund the amount of the smaller fee to her client.  This refund requirement can be seen as "implicitly recogniz[ing] that the attorney is the proper payee of the EAJA fees," and therefore creating ambiguity within the EAJA's statutory scheme.  Smith v. Astrue, 2007 U.S. Dist. LEXIS 96826, at *5 (N.D. Ala. Oct. 11, 2007).  See also Stephens v. Astrue, 2008 U.S. Dist. LEXIS 21429, at *6 (D. Md. Mar. 12, 2008) (The Savings Provision "can be interpreted as anticipating that the attorney would receive directly the fee under EAJA, as well as the fee under 406(b).").

individuals with claims against the federal government will have a greater ability to actually assert those claims if their attorneys can recover attorney's fees in a successful suit." Chonko, 2008 U.S. Dist. LEXIS 32867, at *23.  In practice, the EAJA diminishes a powerful disincentive faced by litigants wishing to challenge governmental action because it allows them to recover attorney's fees.

Paying fees directly to the applicant necessarily frustrates the obvious purpose of the EAJA.  Vargas v. Comm'r of Soc. Sec., 2008 U.S. Dist. LEXIS 18964 (D.N.J. Mar. 12, 2008); Stephens v. Astrue, 2008 U.S. Dist. LEXIS 21429, at *3 (D. Md. Mar. 12, 2008) (An interpretation of the statute that would entitle the prevailing party to the receipt of the fee award (as opposed to counsel) would frustrate this statute's remedial purpose."); Smith v. Astrue, 2007 U.S. Dist. LEXIS 96826, at *7 (N.D. Ala. Oct. 11, 2007) (The purpose of the EAJA "will not be served if the EAJA fees are paid directly to the plaintiff.").

Indeed, the Court of Appeals for the Tenth Circuit, in Manning v. Astrue, 510 F.3d 1246 (10th Cir. 2007), the case most often cited to in support of the Commissioner's position, admits that "it seems counter intuitive to hold that an award of attorney's fees does not go to the attorney, especially since the fees are calculated based on the time spent by the attorney and based on the attorney's hourly rate." Id. at 1255.  Similarly, the Chonko court acknowledges that its holding in favor of the Commissioner "may somewhat frustrate EAJA's purpose of facilitating meritorious litigation against the government." 2008 U.S. Dist. LEXIS 32867, at *11.[5]  Despite

---

[5] See also Hogan v. Astrue, 2008 WL 803649, *3 (W.D.N.Y. Mar. 26, 2008) (sharing "the concerns expressed by plaintiff's counsel that awarding attorneys fees directly to a prevailing plaintiff runs the troubling risk that attorneys representing Social Security claimants will not be fully or consistently paid for their efforts, thus weakening the ability of such claimants to obtain qualified counsel-one of the EAJA's foremost goals").

these admissions and acknowledgments, both Manning and Chonko disregarded the important purpose of the EAJA, feeling constrained by the statutory text of the EAJA.

The inescapable effect of the Commissioner's new practice will be a reduction in fees collectable by the social security bar, which will inevitably lead to a decline in representation of plaintiffs in social security cases.  The economics are simple: "if attorneys aren't paid EAJA fees directly they [will] have no economic motivation to accept District Court work on behalf of Social Security claimants."  Vargas, 2008 U.S. Dist. LEXIS 18964, at **10-11. The reality is that "attorneys will simply refuse to take social security cases because of the likelihood of not getting paid."  Smith, 2007 U.S. Dist. LEXIS 96826, at **8-9.

The Manning court dismissed this concern as "purely speculative," 510 F.3d at 1254, but the reality of Social Security litigation is common knowledge and hardly "speculative."  Social Security applicants appealing the denial of disability insurance benefits regularly need the assistance of an attorney in order to navigate the complicated and often nuanced appeals process.  The administrative regulations governing appeals are technical and the district court's standard of review is a delicate balance of deference and attention to detail.  The purpose of the EAJA is to provide individuals, such as Debra Williams, with an attorney in order to guide them through this process.  The EAJA accomplishes this goal by promising to pay the attorney's fees of the Social Security applicants who successfully appeal the denial of disability insurance benefits.

Unlike plaintiffs in most legal actions, "Social Security claimants [generally] do not pay their attorney's fees upfront."  Stephens, 2008 U.S. Dist. LEXIS 21429, at *32 n.6.  Therefore, in the Social Security context, an EAJA award serves as payment to the attorney, rather than reimbursement of the client.  As a Social Security practitioner's guide explains:

> Attorneys representing plaintiffs in Social Security cases are generally not first paid by their clients, and the clients do not then seek reimbursement from the government. Many attorneys do not seek fees out of their clients past due benefits [as permitted by 42 U.S.C. §406(b)], and instead rely solely on EAJA fees for payment of their fees . . . . [A]ttorneys generally receive only the EAJA fee for their work representing the client in federal court. <u>This fee is not reimbursement to the client, but rather, payment to the attorney</u>.

3 Social Security Practice Guide § 27.03[10] (Matthew Bender & Co. 2008).

Because the attorneys who represent Social Security claimants are relying on EAJA fees as payment for their services, ordering that funds be paid directly to the Social Security claimant materially increases the chances that attorneys will not be paid for their services. The reason is two-fold. First, Social Security applicants are often in reduced financial situations and may decide that an EAJA fee award is better spent on rent rather than paying the attorney who earned the fees. See <u>Stephens</u>, 2008 U.S. Dist. LEXIS 21429, at **25-26. Second, if EAJA fees are paid directly to the applicant, then they are subject to seizure by the federal government as "administrative offsets" under the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3716, to satisfy outstanding debts. See <u>Manning</u>, 510 F.3d at 1255.

The Debt Collection Improvement Act authorizes the Department of the Treasury's Financial Management Service to collect non-tax debts owed to the federal government by offsetting payments made to the debtor by other federal agencies. <u>See</u> 31 U.S.C. § 3716; 31 C.F.R. § 285.5(a)(1). The only federal payments that are not subject to offsets are those specifically listed, and an EAJA fee award is not included in the list of payments that are excluded from offset. 31 C.F.R. § 285.5(e)(2).

Technology has enabled the federal government "to electronically match the prevailing

9

Social Security claimants with those persons owing debts recoverable under the [Debt Collection Improvement] Act." Stephens, 2008 U.S. Dist. LEXIS 21429, at *16. Several courts have permitted administrative offsets to be taken from EAJA fee awards paid directly to the Social Security applicant. See, e.g., Manning, 510 F.3d at 1255-56 (permitted offset to cover unpaid student loan debt owed to the US Department of Education); Reeves v. Barnhart, 473 F. Supp. 2d 1173 (M.D. Ala. 2007) (permitted offset to cover outstanding debt owed to the Chilton County Department of Human Resources). Offsets reduce the fees available, thereby discounting the value of the attorney's service.

Logically, if EAJA fees—the only reliable source of payment for attorneys representing Social Security applicants—are reduced by administrative offsets[6] or are not forwarded to the attorney by the client,[7] then attorneys will stop accepting Social Security cases. When attorneys stop taking cases, then the purpose of the EAJA cannot be fulfilled. A "Social Security plaintiff's ability to challenge unreasonable government action is inextricably tied to his or her ability to retain competent counsel" and "[k]ey to retention of counsel is an assurance that if

---

[6] A practitioner's guide advises attorneys that they can call a toll free number to "learn whether [their] client has a federal debt" that is subject to administrative offsets, but cautions that "a federal debt may accrue during the pendency of the claim." 3 Social Security Practice Guide § 27.03[10].

[7] A practitioner's guide offers the "simple solution" of attaching "an assignment, signed by the plaintiff, to [an attorney's] petition for EAJA fees. The assignment can simply say that [the] client agrees to assign all fees received pursuant to the Equal Access to Justice Act to the attorney." 3 Social Security Practice Guide § 27.03[10]. While this seems like a plausible solution, one court has already rejected it by declining to award EAJA fees directly to attorney even after the claimant submitted an affidavit assigning his rights in the fees award to counsel and agreeing that the award be paid to counsel. See Hall v. Astrue, 2008 U.S. App. LEXIS 7335 (Apr. 4, 2008) (holding that the "private contractual agreement between [a claimant] and his counsel is a collateral matter, which the district court was not required to address when considering the EAJA fees motion").

successful, counsel [will] receive fees for his or her work." Stephens, 2008 U.S. Dist. LEXIS 21429, at **10, 21.

Therefore, the Court concludes that awarding EAJA fees directly to a prevailing party's attorney, rather than the prevailing party herself, advances the EAJA's purpose of assuring that competent representation is available to persons wishing to challenge unreasonable government action. Stephens, 2008 U.S. Dist. LEXIS 21429, at *11; Smith, 2007 U.S. Dist. LEXIS 96826, at *6 (holding that paying attorney's fees directly to the attorney "serves the main purpose of the EAJA"). Any alternative conclusion, based on a narrow, literal application of the statutory text, would require disregarding the effect of such an interpretation on Congress's goal of reducing the deterrents and disparity in bringing meritorious litigation against the federal government. This Court will not disregard the purpose of the statute, and, like Judge Hayden, will "follow the established practice of distributing EAJA legal fees directly to counsel" until instructed by the Court of Appeals for the Third Circuit to do otherwise. Vargas, 2008 U.S. Dist. LEXIS 18964, at *23.[8]

**B. Comparison with § 1988**

In addition to offering a textual analysis, the Commissioner asserts that the EAJA should be construed similarly to the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, which authorizes a court to award reasonable attorney's fees to the prevailing party in civil rights proceedings. The Commissioner posits that similar provisions in federal fee-shifting statutes

---

[8] Common sense supports the Court's decision that EAJA fees belong to the prevailing party's attorney in Social Security cases. If a Social Security applicant "had somehow represented herself and prevailed, no EAJA fee award would have been made." Vargas, 2008 U.S. Dist. LEXIS 18964, at *9.

should be interpreted consistently and that in Evans v. Jeff D., 475 U.S. 717 (1986), the Supreme Court of the United States found that the fee-shifting provision of § 1988 "bestowed on the prevailing party (generally plaintiffs) a statutory eligibility for a discretionary award of attorney's fees . . . ." 475 U.S. at 730.

Although both the EAJA and § 1988 permit an award of fees to a "prevailing party," to maintain that Jeff D. stands for the proposition that attorney's fees are properly paid to the party, as opposed to the attorney, perverts the holding of that case. Jeff D. dealt with the question of whether an offer of settlement in a class action could be conditioned on the waiver of statutorily authorized attorney's fees. The Supreme Court concluded that, because the potential liability for attorney's fees in civil rights action "may overshadow the potential cost of relief on the merits and darken the prospects for settlement if fees cannot be negotiated," the purpose of § 1988 was better served by allowing litigants to use fee waivers as a bargaining tool in settlement negotiations, rather than by adopting a general rule prohibiting settlements conditioned on such waivers. 475 U.S. at 735, 737.

In reaching this conclusion, the Supreme Court reasoned that the permissibility of a negotiated waiver of § 1988 attorney's fees was traceable, not to the rules of ethics, but to § 1988 itself. Id. at 728. Hence, the Supreme Court focused on purpose of § 1988 in order to resolve the waivability issue. Within its discussion, the Supreme Court stated that "Congress bestowed on the 'prevailing party' (generally plaintiffs) a statutory eligibility for a discretionary award of attorney's fees in specified civil rights actions. It did not prevent the party from waiving this eligibility . . . ." Id. at 730. The Supreme Court continued by explaining that "Congress enacted the fee-shifting provision as an integral part of the remedies necessary to obtain compliance with

12

civil rights laws." Id. at 731.

Essentially, the Supreme Court's discussion of § 1988 finds that the right to seek attorney's fees ("eligibility") belongs to the prevailing party. This finding is a necessary step towards the Supreme Court's ultimate conclusion that § 1988 fees can be waived as a provision of a negotiated settlement. The Supreme Court reasoned that if the right to seek fees under § 1988 belonged to the attorney, then it could not be waived by the civil rights plaintiff, and the civil rights plaintiff would lose a powerful bargaining chip in settlement negotiations.

This reading of Jeff D., that the right to seek attorney's fees belongs to the prevailing party as integral to the purpose of § 1988, is supported by the Supreme Court's summation of its § 1988 discussion. The Supreme Court concluded that "while it is undoubtedly true that Congress expected fee shifting to attract competent counsel to represent citizens deprived of their civil rights, it neither bestowed fees awards upon attorneys nor rendered them nonwaivable or nonnegotiable; instead it added them to the arsenal of remedies available to combat violations of civil rights." 475 U.S. at 731-32. Thus, Jeff. D presents a markedly different situation and the Supreme Court's discussion of the waivability of § 1988 fees casts no light on the issue presented here—to whom attorney's fees should be directed, once sought by the prevailing party.

Other cases relied on by the Commissioner also deal only with the issue of who has the right to seek fees, and not who is the proper recipient of the award once sought. In Venegas v. Mitchell, 495 U.S. 82 (1990), the Supreme Court addressed the effect of contingent fee contracts on § 1988 fee awards. In concluding that a civil rights plaintiff could be required by a contingent fee arrangement to pay her attorney more than the amount of the § 1988 fee award, the Supreme Court noted that § 1988 "makes the prevailing party eligible for a discretionary award of

13

attorney's fees." Id. at 87. Thus, "it is the party, rather than the lawyer, who is so eligible" to seek an award of § 1988 fees; just as "it is the party's right to waive, settle, or negotiate that eligibility" to seek such an award. Id. at 88 (citing Jeff D., 475 U.S. at 730-31) (emphasis added). Indeed, like Jeff D., the Supreme Court's ultimate conclusion in Venegas, that § 1988 "does not interfere with the enforceability of a contingent-fee contract" was motivated, at least in part, by § 1988's "general purpose of enabling . . . plaintiffs in civil rights cases to secure competent counsel." 495 U.S. at 90.

The view that the eligibility to seek a statutory fee award lies with the prevailing party has carried over into EAJA cases. In Panola Land Buying Association v. Clark, 844 F.2d 1506 (11th Cir. 1988), the Court of Appeals for the Eleventh Circuit held an attorney did not have a separate claim under the EAJA for attorney's fees which were waived by his client because an attorney cannot be an applicant for fees under the EAJA. Similarly, in Oguachuba v. INS, 706 F.2d 93 (2d Cir. 1983), the Court of Appeals for the Second Circuit held that an attorney does not have standing to apply for EAJA fees. See also Phillips v. GSA, 924 F.2d 1577 (Fed. Cir. 1991) (holding that an EAJA fee had to be requested on behalf of the party; it could not be requested by the attorney). However, none of these earlier cases address the issue of who should receive EAJA fees, once they have been sought. Consequently, these cases are of no help to the Commissioner.

The distinction between who is the proper applicant for an EAJA award of attorney's fees and who is the proper recipient of the fees is summarized in King v. Commissioner of Social Security, 230 Fed. Appx. 476 (6th Cir. 2007). There, the Court of Appeals for the Sixth Circuit explained that "an attorney cannot bring an independent action for attorney's fees." Id. at 481.

14

However, the Court of Appeals continued, once attorney's fees have been awarded under the EAJA they "are payable to the attorney." Id.  The Court of Appeals clarified that, although EAJA fees "are awarded for the benefit of the party," the funds are "not the party's to keep." Id.  Cognizant of this distinction and motivated by the EAJA's purpose, the Court reads the EAJA as granting the right to apply for attorney's fees to the prevailing party, but finds that once fees have been awarded, they are payable to the attorney who earned them.

### III.  CONCLUSION

The EAJA's purpose of diminishing deterrents for individuals wanting to seek review of governmental action requires, in the social security context, that EAJA fee awards be paid directly to the attorney who earned them.  Therefore, for the reasons set forth above, Williams's application for attorney's fees under the EAJA is granted and $5,014.75 will be paid to her attorney.  The Court will enter an order implementing this opinion.


/s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: May 5, 2008